LAMAR, Justice, for the Court.
¶ 1. By opinion of this Court entered September 18, 2003, J. Keith Shelton was suspended from the practice of law pursuant to Rule 6(a) of the Mississippi Rules of Discipline. Miss. Bar v. Shelton, 890 So.2d 827, 831-32 (Miss.2003) (Shelton I). Following dismissal of the underlying criminal charges which resulted in his suspension, Shelton filed his petition for reinstatement on December 28, 2005. Finding Shelton’s petition to be insufficient, this Court referred the matter to a complaint tribunal for an evidentiary hearing. In re Shelton, 987 So.2d 898, 2006 WL 2907945, 2006 Miss.LEXIS 551 (Miss.2006) (Shelton II). This issue has now been resubmitted to this Court along with the Findings of Fact and Conclusions of Law of the complaint tribunal and the Mississippi Bar’s response to those findings.
FACTS AND COURSE OF PROCEEDINGS
¶ 2. In December of 2002, J. Keith Shelton entered an Alford plea to a charge of judicial bribery in the Circuit Court of Hinds County.[1] In response to Shelton’s plea, the Mississippi Bar filed a formal complaint against Shelton on January 23, 2003, requesting disbarment. This Court entered an order on June 30, 2003, striking Shelton’s name from the roll of attorneys and suspending Shelton as a member of the Mississippi Bar, and entered an opinion in Shelton’s case on September 18, 2003. Shelton I, 890 So.2d at 831-32. Shelton’s plea was the basis for his suspension. There was no order from the trial court accepting the guilty plea. However, this Court found “clear and convincing evidence that Shelton’s actions, which led to his entry of a plea” warranted immediate suspension. See M.R.D. 6(a) (attorney pleading guilty to crime involving fraud or dishonesty shall be immediately suspended from practice).
¶ 3. On November 14, 2005, on motion of the State, Hinds County Circuit Court Judge Tomie Green entered two identical orders “remanding with prejudice”[2] the *940 criminal charges against Shelton. On December 28, 2005, Shelton filed his petition for reinstatement pursuant to Mississippi Rules of Discipline 6(b), alleging that the dismissal of the underlying charges which resulted in his suspension warranted immediate reinstatement. The Mississippi Bar objected to Shelton’s petition, taking the position that Shelton was ineligible for reinstatement. While this Court found that Shelton was “eligible for reinstatement,” it determined that “to warrant reinstatement ... Shelton’s petition must satisfy the Rule 12 requirements.” Shelton II, 987 So.2d at 901, 2006 WL 2907945, *8, 2006 Miss. LEXIS 551 at ¶ 7. Mississippi Rules of Discipline 12(a) provides that “[n]o person disbarred or suspended for a period of six months or longer shall be reinstated to the privilege of practicing law except upon petition to the Court.” Petitioners for reinstatement have the burden of proving that they have met all the jurisdictional requirements of procedural Rule 12.7. See Shelton II, 987 So.2d at 902, 2006 WL 2907945, *1, 2006 Miss. LEXIS 551 at ¶ 8.
¶ 4. In Shelton II, this Court concluded that “there [were] many unanswered questions” concerning the facts and circumstances surrounding Shelton’s initial arrest, indictment, and the eventual dismissal of the charges, and directed that a complaint tribunal conduct an evidentiary hearing to provide the additional information necessary for a determination of this matter. 987 So.2d at 904, 2006 WL 2907945, *6, 2006 Miss. LEXIS 551 at ¶ 18. This Court referred the matter to a complaint tribunal for an evidentiary hearing, directing that it should provide this Court with findings of fact, conclusions of law, and recommendations regarding Shelton’s reinstatement. Id.
¶ 5. The complaint tribunal conducted an evidentiary hearing, taking live testimony and accepting forty-three exhibits. These exhibits, which were made available to the Court as a part of this record, include: (1) deposition testimony of Robert Taylor, former Hinds County Chief Assistant District Attorney; (2) affidavits from fourteen witnesses, including three members of the Mississippi Bar, attesting to Shelton’s character; (3) affidavits from attorneys Jacqueline Pierce and Don Leland concerning the facts of the underlying case; (4) the affidavit of Luther Brantley, III, Executive Director of the Mississippi Commission on Judicial Performance; (5) transcripts of two phone calls between Shelton and Judge Houston Patton;[3] (6) the transcript of a recorded meeting between Shelton, Patton and Shelton’s client, James E. Jennings, Jr.; and (7) various court documents and other documentary evidence. The record also included two letters, not in affidavit form, opposing Shelton’s reinstatement. The tribunal presented its findings of fact, conclusions of law, and recommendations to this Court on August 16, 2007. This Court issued an order requesting, inter alia, the following additional items: (1) a transcript of the complaint tribunal’s hearing; (2) copies of all exhibits referenced in the tribunal’s findings of fact and conclusions of law; and (3) a response by the Mississippi Bar. The Court received the requested exhibits on November 13, 2007. A response from the Bar was received on December 11, 2007. Finally, on January 4, 2008, the transcript of the tribunal’s hearing was filed with the Court.
*941 UNDERLYING FACTS OF SHELTON’S ARREST AND INDICTMENT[4]
¶ 6. Shelton’s arrest arose from events which occurred during his representation of James E. Jennings, Jr. In late fall 1996, Jennings hired Shelton to represent him in a possible 42 U.S.C. § 1983 suit against Judge Houston Patton of the County Court of Hinds County. Jennings’s claim against Judge Patton stemmed from a judgment which Jennings had received in Judge Patton’s court.

Jennings’s legal matters leading to Shelton’s representation

¶ 7. In 1993, Jennings filed a malicious prosecution lawsuit against his ex-wife, Stacy A. Kenney, in Judge Patton’s court. This case resulted in Judge Patton entering a $35,000 judgment for Jennings against Kenney on September 24, 1993. Less than one month later, Kenney filed a telephone harassment charge against Jennings in the Justice Court of Hinds County. An order and mittimus was signed by Justice Court Judge Clyde Chapman on February 1, 1994, to put Jennings in jail until bond was posted, and an arrest warrant was issued on February 11 by Justice Court Judge Raymond Bates. Jennings put up a bail bond with AA Bail Bond Company.
¶ 8. Later in February, Jennings received a letter informing him of a trial date setting in a case styled Stacy A. Kenney v. James Jennings, Jr. Since Jennings had neither been served with process nor received a copy of the complaint, he called the Hinds County Justice Court and was informed for the first time that a civil case had been filed. At trial, Jennings was sentenced to jail for contempt of court for not posting a $200 cash bond.[5] Jennings, through counsel, requested a hearing before Judge Patton, and Judge Patton had Jennings released from jail. However, at a hearing before Judge Patton in early March, Jennings’s bond was revoked, and he was sent back to jail.
¶ 9. On March 8, Jennings, while in jail, hired attorney Jacqueline Pierce to represent him. On March 14, after talking with the three different justice court judges who were involved in this matter, Pierce obtained an order to release Jennings. Judge Patton agreed to the order. While the order was being processed at the jail, Pierce met with Jennings’s other attorney, Edwin Kirstine.[6] Upon her return to the jail, she was informed that the order to release had been rescinded and that Jennings would remain in jail.
¶ 10. On the morning of March 15, Pierce spoke with Judge Patton in the foyer of the Hinds County Courthouse. When asked what it would take to get Jennings released from jail, Judge Patton told Pierce that she should get Jennings to sign an agreement to relinquish his right to the $35,000 judgment against Kenney. When Pierce told Judge Patton that this was illegal, Judge Patton turned from her and began speaking to someone else.[7]
*942 ¶ 11. It became clear to Pierce that Jennings would be released from jail only if he agreed to give up his judgment. She suggested this, and after much protest, Jennings finally agreed. After signing the agreement, he was immediately released from jail. During his incarceration, Jennings was not charged or tried for any alleged wrongful conduct. On January 27, 1997, Jennings filed a complaint against Judge Patton with the Mississippi Commission on Judicial Performance. Shelton was not involved in the filing of the complaint.

Jennings Hires Shelton

¶ 12. Shelton was first contacted by Jennings late in the fall of 1996. After being informed of the circumstances of Jennings’s incarceration and the condition upon which he was released, Shelton believed that Jennings had a meritorious claim against Judge Patton. In February 1997, Shelton agreed to represent Jennings in this matter. In late March, Shelton contacted Judge Patton to discuss the possibility of a private settlement. No civil case had been filed by Jennings against Judge Patton.
¶ 13. Shelton met with Judge Patton personally on March 26. At that first meeting, Judge Patton stated that he was confident he had done nothing wrong in Jennings’s case. Judge Patton inquired about the judicial performance complaint that had been filed by Jennings and stated that any settlement would have to include the condition that the complaint be withdrawn. Shelton replied that, though he did not know much about the complaint, he was sure that any ability to drop the complaint was out of Jennings’s control. In the event of a settlement, Shelton told Judge Patton that the Commission would be informed that the civil claims had been satisfied. Judge Patton reiterated his belief that he had not wronged Jennings, and the meeting came to an end. Later that same afternoon, Judge Patton, having apparently reconsidered, contacted Shelton and informed him that he wanted to seriously consider working out a settlement.
¶ 14. Shelton drew up a proposed settlement and release for $25,000, the figure to which Jennings and Judge Patton agreed after some negotiation, and had Jennings sign it. On April 16, Shelton took the agreement to Judge Patton. Judge Patton said he would look over the papers and get back to Shelton. Reinstatement of the judgment against Kenney was not part of this agreement. Later in the day, Judge Patton called Shelton to discuss the proposed settlement. The conversation was recorded. Judge Patton asked Shelton if Jennings wanted the judgment against Kenney reinstated, to which Shelton replied, “No, sir.” It was clear that Jennings did not expect the judgment to be reinstated. Judge Patton continued to talk about reinstating the judgment. Shelton got the impression that Judge Patton wanted to reinstate the order, so Shelton told Judge Patton that he was sure that Jennings would accept it if that was what Judge Patton wanted. Judge Patton instructed Shelton on how to style the order to reinstate the judgment.[8]
¶ 15. Later that same afternoon, Judge Patton called Shelton again and said that he wanted some of the language in the settlement agreement changed. The first change was simply to include the reinstatement of the judgment against Kenney. The second change was to take out the wording “Releasor .... will take affimna- *943 tive steps to inform the Committee on Judicial Review .... ” and instead say “Releasor .... will inform the Committee on Judicial Review....” Both changes were made at the insistence of Judge Patton.
¶ 16. The parties agreed to meet at a Jaekson-area McDonald’s Restaurant. Jennings and Shelton arrived first. When Judge Patton arrived, he asked Jennings and Shelton to join him in his car. Once in the car, Judge Patton gave Shelton $5,000 in cash, the agreed down payment on the settlement, and Jennings and Judge Patton looked over the settlement papers and executed the promissory note. After the entire agreement was consummated, Judge Patton left. Shelton and Jennings were arrested at the McDonald’s shortly thereafter.
ANALYSIS
¶ 17. The complaint tribunal recommended that Shelton be immediately reinstated to the practice of law in the State of Mississippi and that his name be restored to the rolls of the Mississippi Bar. In its response, the Mississippi Bar concluded that: (1) the complaint tribunal’s findings of fact are supported by clear and convincing evidence; (2) the complaint tribunal’s conclusions of law are supported by the Bar’s Rules of Discipline and the case law of the Supreme Court; and (3) the complaint tribunal’s recommendation in this matter is consistent with the findings of fact and conclusions of law.
¶ 18. This Court has exclusive and inherent jurisdiction in matters pertaining to attorney discipline and reinstatement and is the ultimate judge on matters arising under the Mississippi Rules of Discipline. M.R.D. 1. See also In re Massey, 670 So.2d 843, 844 (Miss.1996). In its conclusions of law, the complaint tribunal concluded that:
The facts and circumstances of Mr. Shelton’s initial arrest and the events from that point until Judge Green dismissed the charges against him are disturbing at best but not as to the conduct of Mr. Shelton. While this Tribunal believes that Mr. Shelton should be reinstated to the practice of law, the Court has directed the Tribunal to conduct an inquiry into the requirements for reinstatement under M.R.D. 12. Frankly, it is the position of the Tribunal that the Court should forgo consideration of that Rule and rectify an egregious wrong. It is the opinion of this Tribunal that Mr. Shelton should have never been arrested in the first place, let alone indicted as confirmed by Mr. Taylor.[9]
¶ 19. Notwithstanding its recommendation that Shelton be reinstated without regard to the requirements of Rule 12, the tribunal did address those factors as this Court had previously directed. This Court applies a de novo standard of review to the findings of a complaint tribunal. M.R.D. 9.4.
¶ 20. Rule 12.7 lays out the requirements for a petition for reinstatement. The petition shall: (1) be addressed to the Court, (2) give reasons justifying reinstatement, (3) state the cause or causes for suspension or disbarment, (4) give the names and addresses of all those who suffered pecuniary loss due to the improper conduct, (5) make full amends and restitution, (6) show the necessary moral character for the practice of law and (7) demonstrate the requisite legal education to be reinstated to the privilege of *944 practicing law. We will address each requirement.

Reason for suspension

¶ 21. It is clear that the reason for Shelton’s suspension was his plea of guilty to a charge of bribery of a public official pursuant to Rule 6(a) of the Mississippi Rules of Discipline. See Miss. Bar v. Shelton, 890 So.2d 827 (Miss.2003). That plea was never accepted by the trial court, and the charges were eventually dismissed on the motion of the State. The complaint tribunal found that “Mr. Shelton was wrongfully indicted and should never have been suspended in the first place, although under the Rules of Discipline, neither the Bar nor the Court really had any options with respect to the actions taken by either. The Rules of Discipline clearly provide for the procedures that were followed and Mr. Shelton does not challenge those procedures.”

Reasons justifying reinstatement

¶ 22. The complaint tribunal found that Shelton has maintained his innocence throughout this entire process. Refusing to admit actual guilt, but not wanting to risk a criminal trial, Shelton chose to make an Alford plea to the charges against him. That plea was never accepted by the trial court. The tribunal pointed to pertinent case law as to the standard for acceptance of an Alford plea by a trial court. Before a trial court may accept a guilty plea, the court must have before it “substantial evidence that the accused did commit the legally defined offense to which he is offering the plea.” Corley v. State, 685 So.2d 765, 767 (Miss.1991) (citing Miss. Unif. Crim. R. Cir. Ct. Prac. 3.03(2)). On motion of the State, the trial court dismissed the charges against Shelton, finding that “a thorough examination of the evidence reveals that there is strong doubt as to the ability of the State to carry its burden of proof in a trial.”
¶ 23. The charges against Shelton were also addressed in the deposition of Robert Taylor, the former Chief Assistant District Attorney in Hinds County, who was aware of the circumstances of Shelton’s case before Shelton’s indictment.[10] Taylor testified that Judge Patton was given a script to follow during his recorded conversations with Shelton. However, Judge Patton did not “follow the script,” and because of that, Taylor testified that it was generally believed that the case against Shelton was not pursuable. The tribunal accepted Taylor’s statement that the “case lacks, and never had any prosecutive merit. The decision to send it on the Grand Jury was an egregious error.”
¶ 24. The only basis for Shelton’s suspension was a plea to a charge which was eventually dismissed. This Court accepts the findings of the tribunal and the recommendation of the Mississippi Bar that there are substantial reasons for Shelton’s immediate reinstatement.

Those who suffered pecuniary loss due to Shelton’s actions

¶ 25. The findings of the complaint tribunal reveal that no other person suffered any pecuniary loss due to Shelton’s actions, finding that “[t]he only person who has suffered pecuniary loss throughout this ordeal is J. Keith Shelton.” The tribunal further found “no evidence to indicate that [Shelton’s] client suffered any pecuniary loss.... To the extent that Judge Patton suffered pecuniary loss from that complaint, such was the responsibility of Jennings and not of Mr. Shelton.” Because there exists no evidence or finding that anyone besides Shelton suffered peeu- *945 niary loss, there is no one to whom full amends and restitution must be made.

Necessary moral character for the practice of law

¶ 26. The complaint tribunal found that there is no evidence that Shelton ever lacked the requisite moral character to practice law. The tribunal received affidavit testimony from many people who knew Shelton. All of these people testified to their personal knowledge of Shelton and expressed their support of his reinstatement and their confidence in his moral character. Several spoke of his commitment to his church and the youth of his community. His employers testified that Shelton has at all times been completely candid about his situation, and there is no evidence that Shelton held himself out to be a lawyer since his suspension became effective. In all, fourteen people, including three members of the Mississippi Bar, provided affidavit testimony on behalf of Shelton’s character and recommended that he be reinstated to the practice of law.
¶ 27. In his own testimony, Shelton indicated that he ministered to youth in his community through basketball. Specifically, Shelton started a youth basketball league in Waynesboro. When he moved to Texas after his suspension, he immediately started a league, focusing on disadvantaged kids. Shelton testified that he tried to be a father figure for these disadvantaged kids by playing basketball with them, cooking out with them, and taking them swimming. Shelton and his wife also taught a young couples’ Sunday school class at their church and are active 4H members.

Requisite legal education for the practice of law

¶ 28. The complaint tribunal found that there is no reason to suspect that Shelton lacked the requisite legal education to practice law. In his testimony, Shelton revealed that he had attended various seminars which offer continuing legal education credit. Shelton submitted certificates of attendance from CLE seminars which he has attended since his suspension. Specifically, Shelton attended the following seminars: (1) the “Law of Easements: Legal Issues and Practical Considerations” seminar on September 16, 2005, in Austin, Texas; (2) the “Title Examination” seminar on September 21, 2005, in Dallas, Texas; (8) the “Evictions and Landlord/Tenant Law in Tennessee” seminar on December 6, 2005, in Memphis, Tennessee; (4) the “Advanced Like-Kind Real Estate Exchanges” seminar on October 19, 2006, in Dallas Texas; and (5) the “Employment Law from A to Z” seminar on March 7, 2007, in Springdale, Arkansas. Shelton also provided a copy of a program from the “2007 Summary of Recent Mississippi Law” seminar. He also testified that he was able to keep up with changes in Mississippi law by reviewing this Court’s hand-down lists on the Court’s website. See In re Flautt, 890 So.2d 928, 933 (Miss. 2004) (attending CLE classes and reading Court’s opinions found to be sufficient to meet this requirement). Further, the tribunal has recommended pursuant to Rule 12.5 that Shelton not be required to take the Multi-State Professional Responsibility Exam as a condition of reinstatement as there is “no evidence that Mr. Shelton is lacking in ethical responsibility.”
CONCLUSION
¶ 29. This Court has reviewed the findings of the complaint tribunal, as well as the transcript and the exhibits received into evidence. This Court accepts the findings of the tribunal and the recommendation of the Mississippi Bar that J. Keith Shelton should be immediately reinstated to the practice of law in the State of Mississippi. The Court further accepts *946 the recommendation that, under the peculiar facts of this case, Shelton should not be required to take the Multi-State Professional Responsibility Exam. The petition for reinstatement of J. Keith Shelton to the practice of law in the State of Mississippi is granted.
¶ 30. THE PETITION OF J. KEITH SHELTON FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED, AND HIS NAME SHALL BE IMMEDIATELY RESTORED TO THE ROLLS OF THE MISSISSIPPI BAR.
SMITH, C.J., WALLER AND DIAZ, P JJ., EASLEY, CARLSON,
DICKINSON AND RANDOLPH, JJ., CONCUR. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J., WALLER, P.J., CARLSON, RANDOLPH AND LAMAR, JJ. GRAVES, J., NOT PARTICIPATING.

. Shelton’s plea is referred to as a "best interest” plea throughout the record. This plea is otherwise known as an Alford plea. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); see also Reynolds v. State, 521 So.2d 914, 917 (Miss.1988). An Alford plea allows a defendant to avoid the risk of conviction at trial by pleading guilty without admitting to actual guilt of the crime charged.

. The language "remand with prejudice” was recognized by this Court in Shelton II to indicate that the charges against Shelton were *940 dismissed. While the orders issued by the trial court state that the charges were "remanded with prejudice,” this Court will refer to the trial court’s action as a "dismissal” of the charges.

. Judge Patton’s involvement in this case is addressed in our discussion of the facts underlying Shelton's arrest and indictment.

. A full understanding of this case necessarily requires some explanation of the course of events which led to Shelton's arrest, indictment, and ultimately, his suspension from the practice of law. This section contains a brief summary of the complaint tribunal’s findings of fact.

. Judge Bates refused to accept the bond posted through AA Bail Bond Company.

. Before hiring Pierce, Jennings was represented by Kirstine, whose name is spelled "Kirstine” at some points in the record, and "Kerstine” at others.

. Pierce’s affidavit testimony as to these facts was among the exhibits received by the complaint tribunal.

. The basis for Shelton's bribery indictment was that Shelton offered to have the judicial performance complaint against Patton dismissed in exchange for reinstatement of the judgment against Kenney.

. Robert Taylor was the Chief Assistant District Attorney at the time of Shelton’s indictment. He gave deposition testimony in this case which is discussed at ¶ 23, infra.

. Taylor is the prosecutor who moved to have the charges against Shelton dismissed.